V. O. PARKER v. RALEIGH SAVINGS BANK.

(Filed 31 March, 1910.)

**Feigned Issues—State Bonds—Bank's Surplus—Taxation—Fraud— Corporation Commission—Procedure.**

> This cause, submitted on case agreed, was for damages alleged for refusal of defendant bank to fulfill its contract of purchase from the plaintiff of certain State's bonds issued under chapter 150, Laws 1909, the plaintiff having represented, as an inducement for the sale, that the bank could carry the bonds in its surplus without increasing the taxes on its stock in the hands of its shareholders: *Held,* (1) a "feigned issue" only was raised, upon which the courts will not pass, and the proper manner in which to have the question passed upon by the courts is through an assessment made by the Corporation Commission, as only in this manner will the State be represented to protect its own interests in the question of taxation; (2) that the allegation of fraud in inducing the sale rested upon the construction of a statute accessible to all parties, and as the defendant could investigate the matter, no real issue of fraud was presented.

WALKER, J., dissenting.

APPEAL from *O. H. Allen, J.,* at February Term, 1909, of WAKE.

Civil action heard upon an agreed statement of facts, substan-

PARKER *v.* BANK.

tially as follows: Plaintiff contracted to sell to the defendant
ten bonds of the State of North Carolina, par value $1,000 each,
issued in pursuance of chapter 150, Public Laws 1909, for the
price of $10,550.

The bank refused to take and pay for the bonds, alleging
that the plaintiff stated to the defendant at the time said agree-
ment to purchase was entered into that the said bonds could be
carried by the defendant as part of its surplus, and that the tax
value of the shares of stock held by the shareholders of the de-
fendant bank would not be increased by virtue of the defendant
owning said bonds, and the defendant stated to plaintiff at the
time that it would purchase said bonds upon this representation
of the plaintiff, and the said representation was a part of the
inducement for the defendant to enter into said agreement to
purchase said bonds and become part of the consideration for
said agreement. This is admitted by plaintiff in the "case
agreed."

In the answer of the defendant it is charged that such allega-
tions were false and untrue, but there is no averment or finding
which charges plaintiff with intentional deceit and fraud.

The plaintiff asks for $250 damages for breach of contract,
the admitted difference between the market and contract price
of the bonds. The Superior Court rendered the following judg-
ment upon the "facts agreed": "The court being of the opinion
that the holding of the bonds as stated in the complaint would
not increase the tax value of the shares of stock held by the
stockholders, and the court being of the further opinion that an
increase of the tax value of the shares of stock held by share-
holders of the defendant company by virtue of defendant com-
pany holding said bonds as a part of its surplus, would be an
illegal tax on said bonds and the income and coupons accruing
thereon; it is therefore ordered and adjudged that the plaintiff
recover of the defendant the sum of $250 and the cost of this
action, to be taxed by the clerk."

From the judgment rendered, the defendant appealed.

*W. H. Pace* for plaintiff.
*Murray Allen* for defendant.

BROWN, J. The object of this "friendly suit" is evidently to
procure a construction of section 4 of ch. 150, Laws of 1909,
which is as follows: "The said bonds and coupons shall be ex-
empt from all State, county or municipal taxation or assess-
ment, direct or indirect, general or special, whether imposed
for purposes of general revenue or otherwise, and the interest
paid thereon shall not be subject to taxation as for income, nor

shall said. bonds and coupons be subject to taxation when con-
stituting a part of the surplus of any bank, trust company or
other corporation."

No one disputes the proposition that our State bonds are all
exempt from direct or income taxation in the hands of an indi-
vidual or corporation, but it is contended that when the Corpo-
ration Commission come to determine the taxation value of a
share of stock owned by a stockholder in a bank or other corpo-
ration, in case they find that any portion of its surplus assets,
over and above the amount of its capital stock, is invested in
this particular issue of bonds, under the terms of the act, the
commission must deduct them from such assets. It is contended
that the words, "nor shall said bonds and coupons be subject
to taxation when constituting a part of the surplus of any bank,
trust company or other corporation," are not to be found in any
other legislation authorizing the issue of bonds, and that the
General Assembly inserted them in the act of 1909 for the pur-
pose of creating a home market for the bonds and to largely
enhance their value.

In view of the fact that there are several millions more of
these bonds to be shortly issued, we would be glad to decide this
important question now, but regret that we are unable to do
so in the form presented.

With perfect respect and deference for the learned counsel, as
well as for the parties, this is evidently a "suit made to order,"
arising not out of a real controversy between the parties liti-
gant, but instituted solely for the purpose of obtaining the opin-
ion of the Court upon a "feigned issue."

In the case of *Blake v. Askew,* 76 N. C., 327, such an issue
was presented to this Court to test the validity of State bonds.
The Court dismissed the action as a feigned issue, holding that
the State's interest could not be put in jeopardy by such a pro-
ceeding when the State was not represented by any of her agen-
cies.

In this action both the interests of the State and of the stock-
holders of defendant bank are directly affected, and should not
be passed upon in a feigned suit, when neither are represented.

The "false representations" set up by defendant in avoidance
of the alleged contract constitute no false representation of a
fact, but amount to nothing more than an expression of plain-
tiff's opinion upon what is a question of law. The only founda-
tion for such opinion is the act of the General Assembly, which
the bank officials could easily examine and form their own
opinion.

Under our laws the Corporation Commission is the official

PARKER *v.* BANK.

body whose duty it is first to pass on this question and to promulgate their decision so that all persons affected by it may learn of it.

According to our method of bank taxation, Laws 1909, the property of banking corporations (except real estate and articles of personalty, such as safes, furniture, and the like) is taxed through its shareholders by taxes levied upon its stock in the hands of its owners. The Corporation Commission is the agency of the State now charged with the duty of assessing the value of such shares and certifying it and the names of the owners to the different counties where they reside. Upon this assessed valuation the cashier, for convenience, remits the State tax on each share for the stockholder direct to the State Treasurer, and the stockholder pays the county and municipal taxes where he resides. Laws 1909, p. 703, sec. 33. The valuation of bank stock is based by the commission upon the estimated value of shares as reported by the officials of the bank, and also upon other sources of information pointed out in the statute.

If the Corporation Commission, when it comes to determine the value of the stock of corporations, shall decide to include in the surplus such bonds of this issue as the corporation may own, and thereby increase the value of its shares of stock in the hands of its stockholders, they, as well as the bank, in their behalf may contest the matter in the courts of the State with the Corporation Commission by appeal under Rev., sec. 1074, or by injunction proceedings, as they may be advised. In such proceeding the interests of the State are represented by the commission and that of all its stockholders by the bank, as well as a shareholder in connection with it. As this is an important question, we do not doubt that the Corporation Commission will facilitate a speedy settlement of it.

This action is dismissed. Let each party pay half the costs, both of this and the Superior Court.

Dismissed.

WALKER, J., *dissenting:* While I always hesitate to disagree with my brethren, it seems so very plain to me that the question which the parties intended to raise in the case is clearly presented for decision, and that the case agreed has been submitted to us in good faith, that I am compelled to enter my dissent. The bonds were offered for sale upon the distinct understanding and agreement that they would be nontaxable, and this, it is expressly stated, was an inducement to the making of the contract of sale, and a part of the consideration. In other words, the parties have substantially agreed that the defendant would

not have purchased the bonds if they are taxable under the laws of this State—and for a very good reason, which is, that the supposed exemption from taxation related to the value of the bonds as commercial securities, and the price agreed to be paid was based upon the understanding of the parties, at the time of the sale, that they would be untaxable while held by the defendant, who did not buy them for the purpose of speculation or with the intention of reselling them, but as a permanent investment. How it can be said that this is a feigned issue—a mere fishing for the opinion of the Court, or "a case made to order"— I confess my inability to understand. Every term of the Court we pass upon questions of title, where the parties, at the time of making their contracts, know of the alleged defect in the title and make the contracts with a view of obtaining the opinion of this Court as to the validity of the title. In those cases they are unable to decide as to the law, as the parties are unable to do in this case, without the aid of this Court. The question involved in those cases may have related to the validity of a lien, as, for example, a lien for taxes assessed upon land. In order to determine whether the vendee should be required to take the land and pay the purchase money, would we hesitate to pass upon the question as to the validity of the tax, or its effect as a lien upon the land? Of course not. But it is said that this is an important matter, in which the State has a vital interest. Admit this to be true: the State is not bound by our decision, and, besides, we decide many cases here which may indirectly and vitally affect the interests of the State and also of individuals, but they cannot be said, for that reason, to be necessary, or even proper parties. They are affected by our decision only as a precedent, and not as an adjudication against them. Suppose the question presented in this case had been whether or not the bonds were valid, would we deny to the parties a hearing and a decision? It would seem that such a course would be contrary to all precedent, and the State would no more be a necessary or proper party than would a person *non compos mentis,* who had executed a bond, be a necessary party in a suit strictly between third parties, if its validity, on account of his incapacity, were assailed. If we would decide a case as to the validity of the bonds, why not a case involving a question which affects their value, and was considered by the parties, according to the case agreed, in fixing the price? I express no opinion upon the merits of the case, but I do think that the parties are entitled to a decision from us upon the question they have stated in their case agreed.