The plaintiff is the father and administrator of his son, LeRoy Massey, and instituted this action to recover for wrongful death. Plaintiff sued the North Carolina Public Service Company, and this defendant filed an answer pleading as a defense a release executed by plaintiff on 29 July, 1927, releasing the defendant railroad company from all liability for the killing of plaintiff's intestate. Thereupon plaintiff, upon motion and order, had the railroad company made a party defendant to the suit and alleged that the release relied upon was secured by means of fraud and false representation on behalf of said railroad company.
The evidence tended to show that plaintiff's intestate was employed by the High Point, Thomasville and Denton Railroad Company, and that on or about 12 July, 1927, plaintiff's intestate and other employees of defendant railroad were moving a steam shovel owned by the railroad through the streets of High Point. The steam shovel was about sixteen feet high. Upon reaching the junction of West Green and Grimes streets it became necessary to pass under a wire owned by the Public Service Company which extended across the street from an are light in the center of the street. The wire was stretched about fourteen feet from the ground, and would therefore strike the steam shovel about two feet from the top of the smokestack. Thereupon the agent of the railroad company in charge of said shovel directed plaintiff's intestate to *Page 300 
take a stick and hold the wire up so that the steam shovel could pass thereunder. The wire was without insulation at that point, and this fact was known to the operator of the steam shovel. Plaintiff's intestate in an effort to execute the order given him by his foreman, raised the wire on the end of a stick, but in some way the wire slipped off the end of the stick and came in contact with plaintiff's hand and killed him. Thereafter, about 27 July, a claim agent of defendant railroad came to see plaintiff and found him working in the field. Mr. Plyler, the landlord of plaintiff, came with the claim agent. The plaintiff offered evidence to the effect that the agent offered him $1,000 in settlement for the death of his son. Plaintiff's narrative of the occurrence is as follows: "I said, `A thousand dollars ain't no money for my boy,' and he said, `Well, if you go into a case about it, you won't get anything,' and he says, `That is all the company will allow us to give you,' and I says to Mr. Plyler, `Will a thousand dollars do?' and he says, `I don't know, Preacher, but rather than be out of it all, I would take that.' The claim agent further said: `Put it in law, and you won't get anything; you will have enemies of white and colored,' and I says, `I don't want any enemies among my white friends, because that's all I got to depend on — my white friends.' He said I wouldn't get anything, because he had been around the courts enough to know."
Thereafter the plaintiff, together with his landlord, Mr. Plyler, and the claim agent, went to Monroe to an attorney's office. The plaintiff was advised by the attorney that it would be necessary for him to qualify as administrator of his son in order to sign the release. The proper papers were prepared, and the plaintiff, and Mr. Plyler, the landlord, and the stenographer of the attorney went to the clerk's office and plaintiff was duly qualified as administrator of his son. Immediately thereafter they returned to the office of the attorney who had prepared the release. Plaintiff testified that when the attorney prepared the release, and before he signed it, the attorney "read every word of it to me and fully explained to me that that meant a full settlement of the case. He told me I could never come back any more, and that ended it, and that it would be all that I would ever get. He read it over to me and told me when I signed it that I would sign all my right away as to any claim I had against anybody, and I signed it and took the money."
At the conclusion of the evidence the trial judge sustained a motion of nonsuit and the plaintiff appealed.
There was sufficient evidence of negligence to be submitted to the jury. The evidence clearly discloses that both defendants were joint tort-feasors
in producing the death of plaintiff's intestate. The ultimate question, therefore, is whether or not there was any evidence of fraud in procuring the release, because a release of one joint tort-feasor ordinarily releases all. Braswell v. Morrow, 195 N.C. 127.
The evidence does not disclose that the release was secured by means of concealment or artifice. All of the negotiations between the parties took place in the presence of Mr. Plyler, who advised plaintiff to accept the settlement, and who plaintiff testified "was a good friend of mine." The release was correctly read and thoroughly explained to the plaintiff before he signed it. It is true that there is evidence that the claim agent told the plaintiff he could not recover in a lawsuit, but this is not such a representation as the law denounces as a badge of fraud. Indeed, the representations might well be considered as representations of law and not of fact. Under ordinary circumstances such representations do not create a cause of action. Parker v. Bank, 152 N.C. 253, 67 S.E. 492.
A close examination of the proof does not disclose evidence of fraud in the procurement of the release, and the judgment must stand. Butler v.Fertilizer Co., 193 N.C. 632, 137 S.E. 813; Sherrill v. Little,193 N.C. 736, 138 S.E. 14.
Affirmed.