GRANT PRESNELL v. HARRY LEE LINER AND CHARLES UNDERWOOD.

(Filed 18 September, 1940.)

1. **Torts § 8a—**

Where a literate man signs a release from liability for negligent injury, he may not thereafter, upon attacking the release for fraud and misrepresentation, assert that he did not read the release and was ignorant of its purport unless he was prevented from reading the release by artifice or fraud, since it is his duty to read the instrument before executing it unless prevented from doing so.

2. **Torts § 8c—Plaintiff's evidence held to disclose ratification of release estopping him from thereafter attacking its validity.**

Plaintiff's evidence disclosed that after discovering the import of a release from liability signed by him, he endorsed and cashed the draft given in accord with the release, and used a portion thereof for his own use and allowed the balance to be paid the hospital and his physician, and made no further demand on defendant until the institution of this action nearly two years thereafter. *Held:* Plaintiff's own evidence discloses ratification of the release estopping him from attacking its validity even conceding that its original execution was obtained by fraud and misrepresentation, since plaintiff will not be allowed to accept the benefits and deny the liabilities of the instrument.

APPEAL by defendants from *Bobbitt, J.,* at January Term, 1940, of HAYWOOD.

This is an action to recover damages for personal injuries alleged to have been caused by the negligence of the defendants in running an automobile truck over the plaintiff while crossing a public highway. The defendants pleaded in bar of the plaintiff's recovery a release signed by him. The plaintiff admitted the signing of the release but averred that such signing was procured by fraud and misrepresentation. The defendants moved for judgment as in case of nonsuit when plaintiff had introduced his evidence and rested his case, and renewed their motion at the close of all the evidence. The motions were denied and defendants reserved exceptions.

The issues were answered in favor of the plaintiff, and from judgment predicated on the verdict the defendants appealed, assigning error. The sole exceptions set out in the appellants' brief are those which relate to the denial of the motions for judgment as in case of nonsuit.

*W. T. Crawford, J. Hayes Alley, and F. E. Alley, Jr., for plaintiff, appellee.*

*Williams & Cocke for defendants, appellants.*

SCHENCK, J. The release admitted to have been signed by the plaintiff reads: "Received from H. L. Liner the sum of one hundred twenty-

eight & 50/100 dollars ($128.50), which I (being of lawful age) acknowledge to be in full settlement, accord and satisfaction of a disputed claim growing out of a bodily injury sustained by me on or about Sept. 1, 1937, for which bodily injury I have claimed the said H. L. Liner to be legally liable, which liability is expressly denied, and in consideration of said sum so paid, I hereby remise, release and forever discharge the said H. L. Liner, heirs, successors, administrators, and assigns from any and all actions, causes of actions, claims and demands, for, upon, or by reason of, any damage, loss, injury or suffering which heretofore has been, or which hereafter may be sustained by me in consequence of such accident and injury.

"Witness my hand and seal the day and date first above written.

"This is a Release.

                    (Signed)   GRANT PRESNELL.   (L. S.)"

This release is sufficient in form to bar recovery by the plaintiff. The plaintiff, however, alleges and contends that its execution was obtained by fraud and misrepresentation, and was therefore void. The defendants deny that the release was obtained by fraud and misrepresentation, but allege and contend that if so obtained the plaintiff, after ascertaining the purport and effect of such release, ratified his action in signing it by using the money derived therefor for his benefit, and by waiting nearly two years to make further demand upon the defendants.

There was evidence tending to show that the agent of the defendants represented to the plaintiff at the time the release was presented to him for signature that it was a paper writing to assure his remaining at the hospital for an additional three weeks, and that the plaintiff was thereby lulled into a state of security and signed the release without reading it, or having it read to him. However, it appears from the plaintiff's own testimony that he is a literate man, that he had been a mail carrier for three or four years and had been for 14 years chairman of the board of education of Watauga County, and had had considerable experience handling and endorsing checks and drafts. It further so appears that the plaintiff endorsed the draft which was payable to him in accord with the release and that the money was obtained thereon and distributed among the plaintiff's physician, the hospital and the plaintiff; and that the plaintiff after he had learned that the paper writing was indeed a release had spent a portion of the money realized from the draft for his own uses.

If the plaintiff did not read the release before he signed it, this fact cannot avail him unless prevented from so doing by the defendants. He could read; it was his duty to read the instrument before executing it, *Aderholt v. R. R.,* 152 N. C., 411, unless prevented; he had the oppor-

tunity to do so, and it is doubtful whether there were any circumstances connected with the signing thereof which relieved him of the duty of reading it.   However, it is not necessary to determine this question since it appears from the plaintiff's own testimony that after he learned that the paper writing he had signed was indeed a release, he collected the money from the draft given in accord with the release and used a portion thereof for his own use, and allowed the balance to be paid to the hospital and his physician; and since it further appears the plaintiff waited from September, 1937, the date of the release, until 5 June, 1939, the date of summons, to make further demands upon the defendants.   These facts and circumstances constitute a ratification of the release, even if it be conceded that its original execution was obtained by fraud and misrepresentation.

A release, originally invalid or voidable, for any reason may be ratified and affirmed by the subsequent acts of the persons interested.   Thus if one, who has been induced by fraud and misrepresentation to execute a release and subsequently learns the true import thereof, knowingly takes the benefits of it he thereby ratifies and gives it force and effect.   If the plaintiff knew the facts and circumstances of the execution of the release and knew its provisions, and then accepted its benefits he is thereby estopped to deny its validity.   With full knowledge of its contents, he cannot accept the benefits and deny the liabilities of the instrument—he cannot ratify it in part and reject it in part.   *Sherrill v. Little,* 193 N. C., 736, and cases there cited.

The plaintiff's ratification is further evidenced by his long delay, nearly two years, after learning the true character of the instrument he had signed, in making further demands upon the defendants.

We are of the opinion that it was error to deny the defendants' motion for judgment as in case of nonsuit, and for this reason the judgment of the Superior Court is

Reversed.