SAM DAVIS v. N. E. HARGETT AND TEXTILE INSURANCE COMPANY.

(Filed 23 May, 1956.)

Compromise and Settlement § 3: Election of Remedies § 2—Plaintiff electing to affirm settlement may not recover of third persons for alleged fraud and duress inducing settlement.

Plaintiff alleged that he had a cause of action for the recovery of a large sum for personal injuries and that the individual defendant, a stranger to that cause of action, with the consent and approval of agents of the insurance carrier, induced him to execute a compromise settlement for a grossly inadequate amount by fraudulently misrepresenting that the insurance carrier was not liable for any greater sum, and by duress in threatening to deprive plaintiff, who was in a helpless condition and in the individual defendant's custody, of further medical care and attention. *Held:* Plaintiff not having pursued his remedy against the original tort-feasors but having ratified and confirmed the settlement, made his election, and

may not maintain this action against defendant and the insurance carrier. Therefore, defendants' demurrer to the complaint for its failure to state a cause of action was properly allowed.

DEVIN, J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *Preyer, J.*, 27 February Civil Term, 1956, GUILFORD, Greensboro Division.

Defendants demurred *ore tenus* to the complaint, assigning as ground therefor plaintiff's failure to allege facts sufficient to constitute a cause of action. The court sustained the demurrer and dismissed the action.

The allegations of the complaint through paragraph 9 may be summarized as stated below.

On 3 June, 1954, plaintiff was injured as the result of a collision of two taxicabs, caused by the concurring negligence of both drivers. These facts, alleged in detail, gave rise to a cause of action in favor of plaintiff against the operators and owners of both taxicabs for the recovery of damages in the amount of $35,000.00. The taxicabs were owned and operated by separate companies. Each company, in respect of its taxicab, had a $5,000.00 liability insurance policy issued by defendant insurance company. Further details are omitted because plaintiff's cause of action herein, if any, is not against the owners and operators of said taxicabs.

Taking up next his relations with defendant Hargett, plaintiff alleges that Hargett knew that plaintiff had such cause of action and that said insurance company was obligated to discharge the liability of each taxicab company up to $5,000.00. Thereupon, Hargett "set out upon a scheme to deceive and defraud the plaintiff of the aforesaid cause of action and the monies recoverable thereunder." Under the pretense of friendship, Hargett visited plaintiff in the hospital in Greensboro; and, by sundry acts of ingratiation, was accepted by plaintiff as his confidential adviser. By reason of Hargett's insistence, plaintiff was induced to leave the hospital in Greensboro and the physicians attending him there for admission into the North Carolina Memorial Hospital at Chapel Hill. Hargett had assured him (falsely) that all arrangements had been made for his admission. He was removed to Chapel Hill in Hargett's ambulance; but, since Hargett had made no arrangements, he was refused admission. Upon such refusal, Hargett took him back to Greensboro; and upon arrival in Greensboro Hargett "placed him in an unheated and filthy outhouse in the back yard of Hargett's funeral home on East Market Street without water or toilet facilities and without medicine or medical services of any kind and the plaintiff was kept there in such condition from about October 14, 1954, until about November 29, 1954."

Then we reach paragraphs 10, 11 and 12 of the complaint, quoted in full below.

"10. After defendant Hargett took plaintiff into his custody as aforesaid, the plaintiff received no medicine or medical care, except for a few aspirin tablets, and plaintiff languished and suffered in pain and sickness while held by the defendant Hargett as aforesaid; and, on November 11, 1954, while being so held and without previous arrangement with the plaintiff, agents of the defendant insurance company, acting for and on behalf of their said principal, appeared with the defendant Hargett in the out-building where plaintiff was held; and the defendant Hargett, in the presence of said agents and with their consent and approval, fraudulently and oppressively took advantage of plaintiff's distress by threatening to withhold further medical aid and treatment from him unless he, the plaintiff, let the defendant Hargett compromise his said claim for damages with the defendant insurance company; and, in the presence of the said insurance agents who knew that defendant Hargett was then fraudulently and oppressively taking advantage of plaintiff's distress for the benefit of the insurance company, the plaintiff, knowing that Hargett had theretofore withheld medical aid from him and believing Hargett would make good his threats as aforesaid and being in a helpless condition, was induced by said fraudulent oppressions to submit and did thereby submit to Hargett's demands; and Hargett then and there compromised plaintiff's claim for damages with the defendant insurance company for the sum of $5,000, which amount included all doctor's and hospital expenses, and such compromise was made at a time when defendants knew, or had reason to know, that doctor's and hospital bills would consume the greater part of the $5,000 and that a compromise of plaintiff's cause of action in that amount was grossly inadequate to compensate plaintiff for his injuries. Notwithstanding such knowledge, however, the said agents and the defendant Hargett, still persisting in their fraudulent oppressions aforesaid and acting for the defendant insurance company and in its interests, falsely represented and deceitfully counseled the plaintiff that there were no facts in the collision case which showed carelessness on the part of McRae Taxi Company and that the negligence of the United Taxicab Company was the only cause of his injuries and that $5,000 was all that plaintiff was entitled to get from the insurance company in any event. That said statements were made by the defendants with knowledge of their falsity, or were made in reckless disregard of their truth or falsity, and with knowledge that the policies of the defendant insurance company covered both taxicabs and carried liability on plaintiff's cause of action to the extent of $10,000; and said statements were made by defendants, while plaintiff was under their oppres-

sions, with a fraudulent design to induce the plaintiff to let Hargett make a compromise of his cause of action under an erroneous belief of its value and with the intent to deceive the plaintiff and to induce him to give up his cause of action for the grossly inadequate price aforesaid; and the plaintiff, being uneducated and in a helpless condition and being wholly at the mercy of his oppressors and in need of medical care, was induced thereby to yield and did yield to their demands for a $5,000 compromise of his cause of action as aforesaid; and the defendant insurance company, intending to take and enjoy the fruits of Hargett's frauds and oppressions, and joining and participating therein as aforesaid, took from the plaintiff a release and delivered a draft to Hargett for plaintiff's benefit in compromise of the claim against both taxicab companies; and the defendant Hargett obtained the money on said draft and kept it in his possession.

"11. After getting the proceeds of the draft in his possession, the defendant Hargett made arrangements to put the plaintiff in the North Carolina Memorial Hospital in Chapel Hill, and thereafter the plaintiff's leg was amputated in said hospital; and, after receiving the monies on the draft as aforesaid, the defendant Hargett doled out to the plaintiff the sum of $10 and $15 at a time for his personal needs and paid for his hospital care and medical services in the Chapel Hill hospital. But when plaintiff returned to Greensboro he discovered, on or about the first part of June 1955, that Hargett had fraudulently converted the remainder of the money to his own use; and thereafter the plaintiff had to sue and did sue and recover from Hargett for such fraudulent conversion. That Hargett intended to and did accomplish such fraudulent conversion of funds as a part of his continuing scheme to cheat and defraud the plaintiff of the aforesaid cause of action and the monies recoverable thereunder.

"12. That plaintiff has lost a cause of action worth $35,000 by reason of the aforesaid frauds and oppressions of both defendants; and, by reason thereof, the plaintiff now suffers actual damages in the sum of $35,000."

In the concluding paragraphs, and in the prayer for relief, plaintiff alleges that, by reason of defendants' conduct he is entitled to recover (1) $35,000.00 as actual damages, subject to a credit of $5,000.00; (2) $15,000.00 punitive damages; (3) execution "against the person of defendants;" and (4) costs.

The sole assignment of error is directed to the court's action in sustaining defendant's demurrer *ore tenus* and in the entry of judgment dismissing the action.

*Harry R. Stanley and Alexander & Windsor for plaintiff, appellant.*
*Howerton & Howerton for defendant Hargett, appellee.*

*Armistead W. Sapp for defendant Textile Insurance Company, appellee.*

BOBBITT, J.   Plaintiff alleges that, by reason of the oppression, fraud and duress practiced and imposed upon him by defendants, he was induced to compromise for $5,000.00 his original cause of action for damages against the operators and owners of the two taxicabs; that he has affirmed the compromise settlement whereby the original tort-feasors were released from further liability; but that he is entitled to recover from defendants, jointly and severally, on account of their said wrongful conduct, the value of his original cause of action, to wit, $35,000.00 subject to credit for the $5,000.00 received by him incident to said compromise settlement.

Plaintiff's brief so analyzes the complaint.   Excerpts therefrom: "When the plaintiff executed the release, he was conscious of what he was doing and knew exactly what was happening to him; but he could not resist the oppression, and was compelled to surrender his will to the will of his oppressors.   This is the wrong of which he complains, . . ." Again: "In his complaint, the plaintiff alleges a fraudulent release and elects to *affirm* it, then alleges a cause of action for personal injury *as property* and asks the jury to determine its true value under standard rules fixed by law for the admeasurement of damages in negligence cases."   Again: "The plaintiff's action is in damages for fraud and oppression.   He sues defendants as joint tort-feasors."

Hence, there is no need to point out in detail the facts alleged which show an affirmance or ratification by plaintiff of the compromise settlement and releases.   *Presnell v. Liner,* 218 N.C. 152, 10 S.E. 2d 639; *Sherrill v. Little,* 193 N.C. 736, 138 S.E. 14, and cases cited therein.

At the time thereof, plaintiff was fully aware that he was effecting a compromise settlement and executing full releases as to his original cause of action.   Later, after his confidence in Hargett had been alienated and they became adversary litigants, plaintiff recovered from Hargett the balance of the $5,000.00 not theretofore paid to him or for his benefit by Hargett.

For purposes of decision on this appeal, we assume, under the facts alleged, (1) that plaintiff had a cause of action for damages (worth in excess of $5,000.00) against the operators and owners of the two taxicabs, and (2) that he was induced to make the compromise settlement and execute releases by defendants' wrongful acts of oppression, fraud and duress.

In such case, when the duress was removed and plaintiff became a free agent, he could have maintained his original action, avoiding the compromise settlement and releases if they were pleaded in bar of his right to recover.   *Puckett v. Dyer,* 203 N.C. 684, 167 S.E. 43, and

*Butler v. Fertilizer Works,* 195 N.C. 409, 142 S.E. 483, are typical of such cases. As a prerequisite to such action, plaintiff would have been required to tender or return the portion of the compromise consideration under his control when the duress was removed. *Presnell v. Liner, supra; Sherrill v. Little, supra.*

In his brief, plaintiff states frankly that he makes no contention that he lost his original cause of action by the alleged wrongful conduct of defendants. Plaintiff had three years from 3 June, 1954, when the collision occurred, within which to bring such action. G.S. 1-52(5). See Annotation: "Right of action for fraud or deceit causing loss of remedy." L.R.A. 1917F, 719.

Plaintiff's contention is that his original cause of action was property, wrongfully taken from him by the defendants, and that in this situation he had the legal right to elect as between two remedies, that is, (1) to rescind the compromise settlement and prosecute his original cause of action, or (2) to affirm the compromise settlement and recover damages from defendants for the difference in value between the true worth of his original cause of action and the consideration actually received by him in the settlement. Plaintiff cites no authority in support of his position relating to a similar factual situation. He contends that the general principles declared in numerous cases involving fraudulent sales and conveyances should be applied here.

Unquestionably, where a sale is induced by false and fraudulent representations the defrauded purchaser may elect to affirm the contract as executed; and, having done so, by independent action or by counterclaim to an action by the seller, he may sue for damages resulting from the seller's false and fraudulent representations. Ordinarily, the damages recoverable in such case consist of the difference in value between the property as delivered and as represented. *Hutchins v. Davis,* 230 N.C. 67, 52 S.E. 2d 210; *Buick Co. v. Rhodes,* 215 N.C. 595, 2 S.E. 2d 699. Similarly, where the seller, by false and fraudulent representations, is induced to include in his deed to the purchaser additional land, not covered by their contract, the seller may affirm the deed and recover from the purchaser as damages the value of such additional land. *Modlin v. R. R.,* 145 N.C. 218, 58 S.E. 1075. These cases are typical of the many cited by plaintiff, each of which has been examined. The remedies allowed in such cases are coexistent and consistent. *Machine Co. v. Owings,* 140 N.C. 503, 53 S.E. 345.

The distinction between the factual situations in the decisions cited and the present case is clear. True, in those cases a recovery of damages was allowed notwithstanding affirmance of the contract *as executed;* but the basis of decision was the fact that the *execution of the contract* was not in accordance with the real agreement. The right to

recover damages was laid squarely on the terms of the *real agreement;* and the damages recoverable were such as flowed from the breach thereof. Moreover, it is clearly recognized in such cases that the party who elects to affirm the contract and sue for damages is bound by all obligations imposed upon him by the terms of the *real* agreement. *Hutchins v. Davis, supra.*

Here plaintiff had a damage claim based on tort, of undetermined merit and for an unliquidated amount. There was no sale or transfer of his claim or cause of action against the original tort-feasors. No other person became entitled to prosecute such claim or cause of action. What he did, and all that he did, was to compromise his original claim or cause of action for $5,000.00; and the $5,000.00 was paid to him as agreed. Admittedly, he is entitled to recover no more under the settlement agreement. There has been no breach thereof. His allegations are to the effect that, while he was fully aware of the terms of the agreement when made, he did not make such agreement of his own free will. When the duress was removed, he had the right to affirm it or to rescind it, one or the other. Under the facts here, these remedies were inconsistent, requiring an election. He made the election and is bound thereby.

While plaintiff alleges that he is entitled to recover from defendants herein as joint tort-feasors on account of their alleged wrongful acts, the recovery he seeks is the amount of damages he alleges he was entitled to recover originally against the operators and owners of the two taxicabs. Thus, he seeks to recover indirectly on his original cause of action against parties who were not involved therein.

In this connection, these facts are noted: (1) Hargett had no liability in connection with plaintiff's original cause of action; and (2) defendant insurance company, by reason of its coverage on the two taxicabs, had a maximum contingent liability of $10,000.00.

The alleged mistreatment of plaintiff by Hargett in respect of bad advice, bad accommodations and inadequate care, set forth by plaintiff in some detail, need not be discussed. It is not the basis of the cause of action alleged herein.

In our view, under the facts alleged, plaintiff has no cause of action against defendants herein; and the judgment sustaining their demurrer *ore tenus* and dismissing the action is

Affirmed.

DEVIN, J., took no part in the consideration or decision of this case.