Shaw v. Gee, 2016 NCBC 101.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CVS 3878

JAMES S. SHAW in the right of
GVEST PARTNERS, LLC, a North
Carolina Limited Liability Company,

Plaintiff,

v.

RAYMOND M. GEE,

Defendant.

**ORDER AND OPINION ON
DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT**

1.    **THIS MATTER** is before the Court upon Defendant Raymond M. Gee's ("Gee" or "Defendant") Motion to Dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)") (the "Motion") in the above-captioned case.

2.    Having considered the Motion, the briefs in support of and in opposition to the Motion, and the arguments of counsel at the hearing on July 21, 2016, the Court hereby **DENIES** the Motion.

> *Weissman, Nowack, Curry & Wilco, P.C., by David L. Rusnak, and Robinson, Bradshaw & Hinson, P.A., by Julian H. Wright, Jr. and Stuart L. Pratt, for Plaintiff James S. Shaw in the right of Gvest Partners, LLC, a North Carolina Limited Liability Company.*
>
> *Baucom, Claytor, Benton, Morgan & Wood, P.A., by Rex C. Morgan, for Defendant Raymond M. Gee.*

Bledsoe, Judge.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

3.     The Court does not make findings of fact on motions to dismiss under Rule 12(b)(6), but only recites those facts included in the Amended Complaint that are relevant to the Court's determination of the Motion.

4.     Gvest Partners, LLC ("Gvest") is a North Carolina limited liability company. (Am. Compl. ¶ 2.)  Plaintiff James S. Shaw ("Plaintiff" or "Shaw") and Gee are equal members and co-managers of Gvest.  (Am. Compl. ¶ 7.)

5.     After working together for a number of years, Shaw and Gee engaged in discussions in April 2014 to terminate and separate the "universe of their common business interests and opportunities," including Gvest.  (Am. Compl. ¶¶ 29–30.)  To that end, on April 24, 2014, Shaw and Gee entered into a Dissolution and Separation Agreement ("Agreement").  In the Agreement, Shaw and Gee released each other from certain claims relating to Gvest (the "Release").  (Am. Compl. ¶ 30.)  Both Shaw and Gee signed the Agreement "individually/personally" and "to the extent he is a member, stakeholder, or holds an interest in any entity identified herein."  (Compl. Ex. B, hereinafter the "Agreement".)[1]

6.     Some months prior to executing the Agreement, Gvest sought to purchase certain real property in Sherrill's Ford, North Carolina for development (the

---

[1] The Amended Complaint references two exhibits, Exhibits A and B, which were attached to the original complaint.  (Am. Compl. ¶¶ 9, 30.)  The Court concludes that it may consider those exhibits without converting the Motion into one for summary judgment.  *See Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60, 554 S.E.2d 840, 847 (2001) (holding that a Court ruling on a Rule 12(b)(6) motion can properly review documents specifically referenced in a complaint, even if not attached directly to the complaint).

"Sherrill's Ford Property," "Sherrill's Ford Project," or "Project"). (Am. Compl. ¶ 14.) Gvest ultimately did not pursue the Project. (Am. Compl. ¶ 16.) Instead, Lullwater Holdings, LLC ("Lullwater") purchased the Sherrill's Ford Property after Shaw informed Lullwater of the Project. (Am. Compl. ¶ 17.) At the closing of the Sherrill's Ford Property, Lullwater paid Gvest approximately $243,000 for out-of-pocket pursuit costs Gvest incurred before terminating its pursuit of the Project. (Am. Compl. ¶ 18.) Although Shaw, Gee, and other Gvest employees spent a considerable amount of time and effort pursuing the Project, Gvest did not request payment for these costs because Shaw, as a custom, did not seek fees or commissions from persons with whom he had a preexisting business relationship, like Lullwater's principal here. (Am. Compl. ¶ 19.)

7.     Unbeknownst to Shaw, however, Gee asked Lullwater to pay Gee and another Gvest employee, Adam A. Martin ("Martin"), for the time and effort expended by Shaw, Gee, and other Gvest employees in pursuit of the Sherrill's Ford Project. (Am. Compl. ¶ 22.) To avoid disclosure of the request to Shaw, Gee told Lullwater not to disclose the payments to Shaw and requested that Lullwater make the payments to Gee Real Estate, LLC ("GRE"), rather than to Gee, and to NAV Real Estate, LLC ("NAV"), rather than to Martin. (Am. Compl. ¶ 24.) Gee additionally requested that the checks designate that payment was made for the BCM Acquisition instead of the Sherrill's Ford Project. (Am. Compl. ¶ 24.) Lullwater adhered to Gee's requests and issued two checks on April 10, 2014, one in the amount of $200,000

payable to GRE, and the other in the amount of $100,000 payable to NAV (collectively, the "Lullwater Payments"). (Am. Compl. ¶ 25.)

8.      Shaw alleges that had he known about the Lullwater Payments, he would have required the payments to be made to Gvest and that Gvest would have then distributed the payments to the members of Gvest under the terms of the Operating Agreement.[2] (Am. Compl. ¶ 20.)

9.      During Shaw's negotiations with Gee concerning the Agreement and the Release, Gee did not disclose the Lullwater Payments. (Am. Compl. ¶ 29.) Shaw alleges that if Gee had disclosed the Lullwater Payments, Shaw would have made a specific exception to the Release or otherwise addressed the Lullwater Payments in the Agreement. (Am. Compl. ¶ 31.)

10.     Shaw filed this action on March 3, 2016, and subsequently filed an Amended Complaint on April 22, 2016. The Amended Complaint contains a derivative claim for breach of fiduciary duty and seeks a declaratory judgment that the Release may not be enforced against Shaw because it was obtained through fraud. (Am. Compl. ¶ 40.)

11.     Gee's Motion seeks dismissal of each of Shaw's claims under Rule 12(b)(6). The Court held a hearing on the Motion on July 21, 2016, at which all parties were represented by counsel. The Motion is now ripe for resolution.

---

[2] At the hearing on the Motion, the Court received a copy of the Operating Agreement with the consent of both Plaintiff's counsel and Defendant's counsel. However, the Court has not found it necessary to rely upon or consider the Operating Agreement in its analysis and determination of Defendant's 12(b)(6) motion.

## LEGAL STANDARD

12. On a motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, the Court considers "whether the complaint, when liberally construed, states a claim upon which relief can be granted on *any* theory." *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 56, 554 S.E.2d 840, 844 (2001) (emphasis in original) (citation omitted). "[T]he complaint must provide sufficient notice of the events and circumstances from which the claim arises, and must state allegations sufficient to satisfy elements of at least some recognized claim." *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). The Court construes the complaint liberally and generally accepts all allegations as true. *Laster v. Francis*, 199 N.C. App. 572, 577, 681 S.E.2d 858, 862 (2009).

13. Where the pleading refers to and depends on certain documents, the Court may consider those documents without converting the motion into one for summary judgment under Rule 56. *Schlieper v. Johnson*, 195 N.C. App. 257, 261, 672 S.E.2d 548, 551 (2009).

14. Dismissal under Rule 12(b)(6) is proper only "when one or more of the following three conditions is satisfied: (1) when the complaint on its face reveals that no law supports plaintiff's claim; (2) when the complaint reveals on its face the absence of fact sufficient to make a good claim; [or] (3) when some fact disclosed in the complaint necessarily defeats the plaintiff's claim." *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985) (citation omitted). Otherwise, "a complaint

should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." *Sutton v. Duke*, 277 N.C. 94, 103, 176 S.E.2d 161, 166 (1970) (emphasis omitted).

## III.

## ANALYSIS

15.    Gee contends that Shaw has failed to state a claim for relief in the Amended Complaint because the Release bars Shaw from bringing a derivative lawsuit on behalf of Gvest as a matter of law. (Def.'s Br. Supp. Mot. Dismiss 5.) Gee further contends that the Amended Complaint fails to sufficiently allege fraud as a bar to the Release, (Def.'s Br. Supp. Mot. Dismiss 7), and that Shaw has ratified the Agreement and the Release, precluding Shaw's fraud defense, (Def.'s Br. Supp. Mot. Dismiss 10). Finally, Gee contends, separate and apart from his Release-based argument, that Gee's derivative claim for breach of fiduciary duty should be dismissed because Gvest cannot show damages resulting from the alleged breach. (Def.'s Br. Supp. Mot. Dismiss 12.)

A. The Release

16.    Shaw seeks a declaratory judgment that the Release is unenforceable against him. Under North Carolina law, "[a] release 'operates as a merger of, and bars all right to recover on, the claim or right of action' covered by the release." *RCJJ, LLC v. RCWIL Enters., LLC*, 2016 NCBC LEXIS 46, at *16 (N.C. Super. Ct. June 20, 2016) (citation omitted). "Releases are contractual in nature and their interpretation

is governed by the same rules governing interpretation of contracts." *Chemimetals Processing, Inc. v. Schrimsher*, 140 N.C. App. 135, 138, 535 S.E.2d 594, 596 (2000) (citation omitted). However, a release, like other contracts, is unenforceable when it is procured through fraud. *See, e.g.*, *Sykes v. Keiltex Indus., Inc.*, 123 N.C. App. 482, 485, 473 S.E.2d 341, 344 (1996) (citing *Cunningham v. Brown*, 51 N.C. App. 264, 269, 276 S.E.2d 718, 723 (1981)).

17. The Agreement contains the following Release:

> The following release of rights, claims and interests is limited to Gvest Partners LLC and any other entity under the Gvest name: Shaw and JS Real Estate Investments LLC and Gee and Gee Real Estate LLC hereby fully, forever, irrevocably and unconditionally release and discharge each other from any other rights, claims or interest related to Gvest Partners LLC and any other entity under the Gvest name except those discussed in this Agreement.

(Agreement § VI.) Shaw and Gee each signed the Agreement twice; first, in their individual capacities, and second, "to the extent [each] is a member, stakeholder, or holds an interest in any entity identified herein." (Agreement.)

### 1. The Release's Application to Shaw's Derivative Claim

18. Gee argues that because Shaw signed the Agreement "to the extent he . . . holds an interest in an entity identified herein," and because Gvest is one of the entities identified in the Release, Shaw has released all of his "ownership interests" in Gvest as defined by N.C. Gen. Stat. § 57D-1-03, which includes "any right to bring a derivative action." (Def.'s Reply Supp. Mot. Dismiss 1–2.) Shaw responds in opposition that the Release cannot be properly read to release derivative claims, but regardless of whether the Release applies to derivative claims, Shaw claims that the

Release is unenforceable because it was procured through fraud ("Fraud Defense"). (Pl.'s Memo. Opp. Mot. Dismiss 4–5.)

19. The Court employs general rules of contract construction to interpret the Release. *Chemimetals Processing, Inc.*, 140 N.C. App. at 138, 535 S.E.2d at 596. "The scope and extent of the release should be governed by the intention of the parties, which must be determined by reference to the language, subject matter and purpose of the release." *Id.* The language in the contract "must be construed to mean what on its face it purports to mean," *Fin. Servs. of Raleigh, Inc. v. Barefoot*, 163 N.C. App. 387, 395, 594 S.E.2d 37, 43 (2004) (quoting *Hartford Accident & Indem. Co. v. Hood*, 226 N.C. 706, 710, 40 S.E.2d 198, 201 (1946)), and to give every word and every provision effect, *In re Foreclosure of a Deed of Trust*, 210 N.C. App. 409, 415, 708 S.E.2d 174, 178 (2011) (citation omitted). When a release's language is clear and unambiguous, construction of the release is a matter of law for the court. *TaiDoc Tech. Corp. v. O.K. Biotech Co.*, 2015 NCBC LEXIS 74 at *14 (N.C. Super. Ct. July 17, 2015) (quoting *Piedmont Bank & Trust Co. v. Stevenson*, 79 N.C. App. 236, 240, 339 S.E.2d 49, 52, *aff'd per curiam*, 317 N.C. 330, 344 S.E.2d 788 (1986)).

20. The Court concludes that the plain language of the Release and the Agreement is clear and unambiguous. The Release, which "release[d] and discharge[d] [Gee and Gee Real Estate LLC] from any other rights, claims or interest related to Gvest," was signed by Shaw "to the extent he is a member, stakeholder, or holds an interest in any entity identified herein," including Gvest. (Agreement.) The Court concludes that under a plain reading of the Release, "interest" as used here

includes Shaw's rights as a member and stakeholder in Gvest and is intended to cover all of Shaw's ownership interests in Gvest. Because a person's "ownership interests" in a North Carolina limited liability company like Gvest are defined in N.C. Gen. Stat. § 57D-1-03 and expressly include the "right to bring a derivative action," the Court concludes that Shaw has released any right he has to bring a derivative action on behalf of Gvest and has affirmed the Release by signing the Release in his capacity as a member, stakeholder or other interest holder in Gvest.

### 2. Gee's Alleged Fraud as a Bar to the Release

21. Next, the Court addresses Gee's contention that Shaw is not entitled to the requested declaratory judgment because Plaintiff has not sufficiently alleged that fraud bars enforcement of the Release. "[F]raud may be based on an 'affirmative misrepresentation of a material fact, or a failure to disclose a material fact relating to a transaction which the party had a duty to disclose.'" *Hardin v. KCS Int'l, Inc.*, 199 N.C. App. 687, 696, 682 S.E.2d 726, 733 (2009) (quoting *Harton v. Harton*, 81 N.C. App. 295, 297, 344 S.E.2d 117, 119 (1986)).

22. The essential elements of fraud are: "(1) False representation or concealment of a [past or existing] material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Id.* (alteration in the original) (citation omitted).

23. Gee argues that Shaw has failed to plead the necessary elements of his Fraud Defense by not alleging any facts showing a duty to disclose and by admitting

in the Amended Complaint the immateriality of the information withheld. (Def.'s Br. Supp. Mot. Dismiss 8; Def.'s Reply 3.)

24. A duty to disclose arises where either: (1) the parties to the transaction are in a fiduciary relationship; (2) the parties are not fiduciaries and "a party has taken affirmative steps to conceal material facts from the other"; or (3) the parties are not fiduciaries and "one party has knowledge of a latent defect in the subject matter of the negotiations about which the other party is both ignorant and unable to discover through reasonable diligence." *Hardin*, 199 N.C. App. at 696, 682 S.E.2d at 733 (quoting *Sidden v. Mailman*, 137 N.C. App. 669, 675, 529 S.E.2d 266, 270–71 (2000)).

25. Shaw acknowledges that a fiduciary relationship did not exist between Shaw and Gee as member-managers of Gvest. *See Kaplan v. O.K. Techs, LLC*, 196 N.C. App. 469, 474, 675 S.E.2d 133, 137 (2009) (holding that managers do not owe a fiduciary duty to other member-managers solely on the basis of their relationship as a member-manager of the limited liability company); *RCJJ, LLC*, 2016 NCBC LEXIS 46, at *28 ("Under North Carolina law, a manager does not have a fiduciary duty to the individual members of the company."). Shaw argues instead that he alleges facts in the Amended Complaint showing that Gee took affirmative steps to conceal material facts from him. A fact is material if, had it been known to the party, it would have influenced the party's judgment or decision in making the contract. *Godfrey v. Res-Care, Inc.*, 165 N.C. App. 68, 75–76, 598 S.E.2d 396, 402 (2004) (citing *Machine Co. v. Bullock*, 161 N.C. 1, 7, 76 S.E. 634, 636 (1912)).

26. Shaw argues, and the Court agrees, that the Amended Complaint asserts specific affirmative acts that Gee took to conceal the Lullwater Payments. In particular, Shaw contends that Gee "secretly asked Lullwater to pay him and Martin, in the aggregate, $300,000 for work Gvest . . . performed in pursuit of the Sherrill's Ford Project." (Am. Compl. ¶ 22.) Shaw also alleges that Gee asked "Lullwater to pay [GRE] instead of Gee, and to pay [NAV] instead of Martin" in order to ensure Shaw was not aware of the secret payments. (Am. Compl. ¶ 24.) Shaw further contends that Gee directed Lullwater to designate on the checks that the payments were made in connection with the BCM Acquisition instead of the Sherrill's Ford Project. (Am. Compl. ¶ 24.) Shaw also alleges that Gee instructed Lullwater "not to disclose such payments in any matter to Shaw" and made false "assurances [to Shaw] that Gee had fully and honestly disclosed the scope and extent of [Gvest's] business interests and opportunities." (Am. Compl. ¶¶ 24, 31.)

27. As a result, having determined that Shaw has alleged that Gee took specific affirmative steps to conceal the Lullwater Payments, the Court must next decide whether Shaw pleads in the Amended Complaint that the existence of, and circumstances surrounding, the Lullwater Payments were material facts. As to that issue, Shaw specifically alleges: "Had Gee not fraudulently failed to disclose the Lullwater Payments, Shaw would have made the Lullwater Payments a specific exception to the release contained in the Agreement or otherwise addressed such payments in the Agreement." (Am. Compl. ¶ 31.) As such, Plaintiff contends the Lullwater Payments were material.

28.    Defendant argues that the Lullwater Payments were not material because the Amended Complaint alleges that Gvest "did not ask to be paid" based on Shaw's preexisting relationship with Lullwater's principal and Shaw's "custom and practice . . . not to seek fees or commissions from persons involved with him in other business pursuits." (Am. Compl. ¶ 19.) Defendant's argument, however, confuses the legal inquiry for materiality and fails to focus on the parties' entry into the Agreement and Release as the transactions at issue here. Whether Shaw sought payment from Lullwater at the time Lullwater closed on the Project is not determinative of whether Shaw would have entered into the same Agreement and Release with Gee had he known about the Lullwater Payments. Therefore, the Court is not persuaded by Gee's argument.

29.    Here, Shaw has alleged that had he known of the Lullwater Payments and the surrounding circumstances, he would not have agreed to the Release and the other terms proposed in the Agreement. At the Rule 12(b)(6) stage, the Court concludes that these allegations of fact, taken as true, are sufficient to establish that the existence of, and circumstances surrounding, the Lullwater Payments were material facts. *See Godfrey*, 165 N.C. App at 75–76, 598 S.E.2d at 402 (stating an omitted fact is material if it "would have influenced [plaintiff's] judgment or decision in entering the contract"); *see also Lowe v. Bradford*, 205 N.C. 366, 369, 289 S.E.2d 363, 366 (1982) ("[A] fact is 'material' if it would constitute or irrevocably establish any material element of a claim or a defense[.]"). Therefore, taking the allegations of the Amended Complaint as true, the Court concludes that Shaw has alleged facts

showing that Gee took affirmative steps to conceal material facts from Shaw, which Gee thus had a duty to disclose, and that Shaw has otherwise pleaded the essential elements of his Fraud Defense.[3]

30. Gee also asserts that Shaw's claim for declaratory relief fails to meet the particularity requirements of Rule 9(b) by not alleging the time or place of the purported omission of material fact. (Def.'s Br. Supp. Mot. Dismiss 7.) North Carolina Rule of Civil Procedure 9(b) states that "[i]n all averments of fraud, duress or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." N.C. R. Civ. P. 9(b). "While the facts constituting fraud must be alleged with particularity, there is no requirement that any precise formula be followed or that any certain language be used." *Carver v. Roberts*, 78 N.C. App. 511, 512–13, 337 S.E.2d 126, 128 (1985) (citing *Brooks v. Ervin Constr. Co.*, 253 N.C. 214, 217, 116 S.E.2d 454, 457 (1960)). "[I]t is sufficient if, upon a liberal construction of the whole pleading, the charge of fraud might be supported by proof of the alleged constitutive facts." *Piles v. Allstate Ins. Co.*, 187 N.C. App. 399, 406, 653 S.E.2d 181, 186 (2007) (quoting *Carver*, 78 N.C. App. at 513, 337 S.E.2d at 128).

31. Based on its careful review of the Amended Complaint, the Court finds that the particularity requirement of Rule 9(b) has been met here. In particular, as the Court has previously concluded, Shaw has sufficiently alleged facts showing that Gee

---

[3] Shaw further argues that Gee also owed a duty to disclose because there was a latent defect in the subject of the negotiations that Shaw was unable to discover through reasonable diligence. *Hardin*, 199 N.C. App.at 696–97, 682 S.E.2d at 734. In light of the Court's conclusion that the Amended Complaint alleges sufficient facts to support a duty to disclose, the Court need not address Shaw's argument under that theory.

had a duty to disclose, and failed to disclose, the Lullwater Payments, and that the Lullwater Payments were paid to Gee through his entity GRE and not to Gvest. Shaw has also specifically alleged that Gee failed to disclose these material facts when Shaw and Gee discussed the "universe of their common business interests and opportunities" in April 2014 and again when Shaw entered into the Agreement and Release upon Gee's assurance that "Gee had fully and honestly disclosed the scope and extent of [Gvest's] business interests and opportunities." (Am. Compl. ¶¶ 24, 29, 31.)

32. The Court concludes that, viewed as a whole, the facts alleged are sufficiently particular to support each required element of fraud under Rule 9(b) and adequately put Gee on notice of the specific facts and circumstances Shaw contends support his Fraud Defense. *See generally Hudgins v. Wagoner*, 204 N.C. App. 480, 487, 694 S.E.2d 436, 443 (2010) (under Rule 9(b), "[a] requirement of specificity is not a requirement of perfect and complete specificity"); *Loftin v. QA Invs. LLC*, 2015 NCBC LEXIS 44, at *18 (N.C. Super. Ct. Apr. 30, 2015) ("There is no precise formula for pleading fraud.").

### 3. Shaw's Alleged Ratification of the Release

33. Gee next argues that Shaw has ratified the Release by retaining its benefits and thus is barred from attacking the Release. (Def.'s Br. Supp. Mot. Dismiss 10.)

34. Our courts have long held that "if one, who has been induced by fraud and misrepresentation to execute a release subsequently learns the true import thereof, and knowingly takes the benefits of it, he thereby ratifies and gives it force and

effect." *Presnell v. Liner*, 218 N.C. 152, 154, 10 S.E.2d 639, 640 (1940) (finding plaintiff ratified contract by accepting consideration and not raising fraud challenge until two years after contract execution). Stated differently, "[i]f the plaintiff knew the facts and circumstances of the execution of the release and knew its provisions, and then accepted its benefits he is thereby estopped to deny its validity." *Id.* (citing *Sherrill v. Little*, 193 N.C. 736, 138 S.E. 14 (1927)). Moreover, "[w]ith full knowledge of its contents, [a plaintiff] cannot accept the benefits and deny the liabilities of the instrument—he cannot ratify it in part and reject it in part." *Id.*

35.    Taking Shaw's allegations as true, the Court concludes that the facts alleged in the Amended Complaint do not mandate a conclusion that Plaintiff ratified the Agreement as a matter of law. The Amended Complaint states that Shaw learned of the Lullwater Payments after the execution of the Agreement, (Am. Compl. ¶ 26), and Shaw does not allege facts showing that he retained any benefits flowing from the Agreement after he discovered the Lullwater Payments. Therefore, at this stage, the Court concludes that Shaw's declaratory judgment claim is not barred by the doctrine of ratification as a matter of law. *See, e.g., Espinosa v. Martin*, 135 N.C. App. 305, 309, 520 S.E.2d 108, 111 (1999) ("To constitute ratification as a matter of law, the conduct must be consistent with an intent to affirm the unauthorized act and inconsistent with any other purpose.").

B. Derivative Claim for Breach of Fiduciary Duty

36.    In the alternative, Gee argues that Shaw's claim for breach of fiduciary duty must be dismissed because Shaw fails to allege any damage flowing from the

Lullwater Payments. (Def.'s Br. Supp. Mot. Dismiss 12.) In particular, Gee contends that the allegations of the Amended Complaint establish that Gvest did not receive payment for the time and effort of Shaw, Gee, and Gvest's employees because Shaw had a custom of not seeking such payment from business associates like Lullwater's principal. (Def.'s Br. Supp. Mot. Dismiss 12.) Accordingly, Gee argues that Gvest effectively waived any claim to payment for the Sherrill's Ford Project and, as a result, has suffered no damages. (Def.'s Br. Supp. Mot. Dismiss 13.)

37. To state a claim for breach of fiduciary duty, a plaintiff must allege that (1) a fiduciary relationship existed, (2) the duty arising from that fiduciary relationship was breached, and (3) plaintiff suffered an injury that was proximately caused by the defendant's wrongful act or inaction. *See Farndale Co., LLC v. Gibellini*, 176 N.C. App. 60, 68, 628 S.E.2d 15, 20 (2006).

38. "[M]anagers of a limited liability company . . . owe a fiduciary duty to the company." *Kaplan*, 196 N.C. App. at 474, 675 S.E.2d at 137; *see* N.C. Gen. Stat. 57D-3-21(b). Subject to Chapter 57D and the limited liability company's operating agreement, a manager may breach his fiduciary duty when he diverts a business opportunity that rightfully belongs to the limited liability company for his personal gain. *See generally Meiselman v. Meiselman*, 309 N.C. 279, 307, 307 S.E.2d 551, 568 (1983) (addressing defendant's duty of loyalty to the corporation as a corporate director and officer); *RCJJ, LLC*, 2016 NCBC LEXIS 46, at *31–32 (holding that the manager's fiduciary duty to an LLC is not extinguished until the manager's relationship with the company ceases as provided in N.C. Gen. Stat. § 57D-3-20). "A

claim for usurpation of corporate opportunities is really a claim for breach of fiduciary duties." *Stec v. Fuzion Inv. Capital, LLC*, 2012 NCBC LEXIS 24, at *28 (N.C. Super. Ct. Apr. 30, 2012).

39. To determine whether a business opportunity has been usurped, a court should consider whether "the disputed opportunity is functionally related to the [company's] business," and "whether the [company] has an interest or expectancy in the opportunity." *Meiselman*, 309 N.C. at 311, 307 S.E.2d at 570. This determination turns on the facts in a particular case. *Id.* at 310–11, 307 S.E.2d at 569–70 (discussing six "'recurring circumstances' which courts continually find relevant in determining whether a corporate opportunity has been usurped").

40. Contrary to Gee's contention, the relevant inquiry is not whether Shaw had a custom of not causing Gvest to ask for payments like the Lullwater Payments. (Am. Compl. ¶ 19.) Rather, the critical issue is whether Gvest had an interest or expectancy in the Lullwater Payments. Gee's argument assumes that Gvest's decision not to request payment from Lullwater extinguished any interest Gvest had in whether Gvest was paid for its time and effort on the Project. Taking Shaw's allegations as true, however, Gee's assumption is misplaced. Indeed, Shaw has alleged that the Lullwater Payments paid to Gee and Martin were compensation for the time and effort expended by Gvest, (Am. Compl. ¶ 22), and that he "would have required the [Lullwater Payments] . . . be made to Gvest" rather than to Gee and Martin had he known that Gee had requested payment and that Lullwater had agreed to pay, (Am. Compl. ¶ 20).

41. Taking Shaw's allegations as true, the Court cannot conclude, as a matter of law, that Gvest's decision not to request payment necessarily caused Gvest to relinquish its interest or expectancy in receiving the Lullwater Payments in the event such payments were made. Because it is this interest or expectancy of Gvest that Shaw has alleged that Gee misappropriated, (Am. Compl. ¶ 31), Gee's contention that Gvest has not alleged compensable damages is without merit. Accordingly, the Court concludes that Gee's motion to dismiss Shaw's derivative claim for breach of fiduciary duty should be denied. *See SCA-Blue Ridge, LLC v. WakeMed,* 2016 NCBC LEXIS 2, at *26 (N.C. Super. Ct. Jan. 4, 2016) (declining to dismiss breach of fiduciary duty claim based on usurpation of LLC's corporate opportunities); *see generally Brite v. Penny,* 157 N.C. 110, 115, 72 S.E. 964, 966 (1911) ("The law would not permit him to act in any such double capacity to appropriate business for himself belonging legitimately to his corporation and to reap the profits of it."); *Seraph Garrison v. Garrison,* No. COA14-1166, 2016 N.C. App. LEXIS 384, at *27 (N.C. App. Apr. 19, 2016) (unpublished) (finding breach of fiduciary duty where defendant used proceeds from corporate contract to benefit himself at expense of corporation).

V.

CONCLUSION

42. Based on the foregoing, the Court hereby **DENIES** Defendant's Motion to Dismiss Plaintiff's Amended Complaint.

**SO ORDERED**, this the 21st day of December, 2016.


                                    /s/ Louis A. Bledsoe, III
                                    Louis A. Bledsoe, III
                                    Special Superior Court Judge
                                      for Complex Business Cases