BRYSON W. BIGGS, ANCILLARY ADMINISTRATOR WITH WILL ANNEXED OF THE ESTATE OF ARNOLD M. DAVIS, DECEASED, v. FIRST-CITIZENS BANK AND TRUST COMPANY OF SMITHFIELD, NORTH CAROLINA, EXECUTOR AND TRUSTEE OF THE ESTATE OF JAMES E. BRYAN, DECEASED, AND BYRON E. BRYAN, EXECUTOR OF THE ESTATE OF MARY Z. BRYAN, DECEASED.

(Filed 28 January, 1959.)

**1. Fraud § 2:   Cancellation and Rescission of Instruments § 10—**

While fraud is presumed in dealings between a fiduciary and the person to whom he stands in such relationship, in order for such presumption to obtain and be sufficient to take the case to the jury, it is first required that there be sufficient evidence to support a finding that such fiduciary relationship existed.

**2. Fiduciaries—**

An agreement under which the employees of a corporation contract with the principal stockholders to purchase the entire capital stock of the corporation, partly for cash and partly upon deferred payments, merely defines the contractual rights and obligations of the respective parties, and does not establish a fiduciary or confidential relationship between them.

**3. Cancellation and Rescission of Instruments § 10— Evidence held not to disclose absence or inadequacy of consideration.**

Certain of the employees of a corporation executed an agreement with the principal stockholders under which the employees were to purchase the entire capital stock of the corporation, partly in cash and partly upon deferred payments. The cash payment was made out of the corporate assets. Thereafter the business was continued and the employees received the same or larger salaries. Upon the refusal of one of the employees to sign notes for the balance of the purchase price, the agreement was revoked by instrument intended to restore the *status quo ante*

and releasing the partners of their obligations to pay the large deferred portion of the purchase price. *Held:* The agreement of revocation was supported by a valuable consideration, and the contention of the representative of an employee-partner who signed the instrument that the absence or gross inadequacy of consideration for the revocation of the agreement was sufficient to take the issue of fraud in its execution to the jury is untenable.

**4. Same— Evidence held insufficient to show that execution of agreement was procured by fraud, duress or undue influence.**

Certain of the employees of a corporation entered into an agreement with the principal stockholders to purchase the entire capital stock of the corporation upon cash and deferred payments. Upon the refusal of one of the employees to sign notes for the deferred payments, an agreement revoking the prior agreement was drawn up and signed by the parties. This action was instituted by the personal representative of one of the employees who had signed the revocation agreement to rescind the agreement of revocation for fraud. The evidence disclosed that the employees were requested to sign the revocation agreement on the day it was drawn up in order that one of the attorneys might return to his residence outside the State, but there was no evidence that plaintiff's testate failed to read or understand the revocation agreement or that he requested further time for consideration. *Held:* The evidence is insufficient to show that intestate's signature to the revocation agreement was obtained by fraud, duress or undue influence, and nonsuit was properly entered

APPEAL by plaintiff from *Fountain, Special J.,* June (assigned) Civil Term, 1958, of WAKE.

The appeal is from a judgment of involuntary nonsuit entered at the conclusion of plaintiff's evidence.

Civil action instituted October 13, 1955, to recover from First-Citizens Bank and Trust Company of Smithfield, North Carolina, Executor and Trustee of the estate of James E. Bryan, deceased, and Mary Z. Bryan, 8% of all of the assets of a partnership consisting of Arnold M. Davis (plaintiff's testate), Luther B. Hughes, David T. Bailey, June D. Lane, William E. Moore, Samuel A. James, and Colin Mac-Nair, operating under the firm name of Bryan Rock and Sand Company, in the alleged wrongful possession of defendants, including all additions thereto and increases therein from May 1, 1952, to December 10, 1952, and 8% of all additions thereto and increases therein and net profits accruing from the management and operation of the same by defendants since December 10, 1952, subject to any deductions for which plaintiff may be liable, and for an accounting.

Defendants, answering, denied plaintiff's right to recover and pleaded a release. Plaintiff, in reply, alleged that his execution of the release was obtained by fraud, duress and undue influence.

Defendant Mary Z. Bryan died, testate, on July 9, 1957. Byron E.

Bryan, the duly appointed and qualified executor for her estate, was substituted as party defendant in her stead. He adopted the answer theretofore filed by Mary Z. Bryan.

A prior civil action had been instituted June 4, 1953, wherein Arnold M. Davis was plaintiff and First-Citizens Bank and Trust Company of Smithfield, North Carolina, Executor and Trustee of the estate of James E. Bryan, deceased, and Mary Z. Bryan, were defendants. It was tried at October Term, 1954. The record on this appeal shows that a judgment was entered therein but does not disclose the contents thereof.

Arnold M. Davis died, testate, on March 27, 1955. At the time of his death, he was a resident of Florida where his will was probated and the executrix named therein qualified. On October 3, 1955, Bryson W. Biggs was appointed Ancillary Administrator with Will Annexed of the Estate of Arnold M. Davis, deceased, by the Clerk of the Superior Court of Wake County, North Carolina, and duly qualified. Shortly thereafter, as indicated above, the present action was instituted.

As indicated above, James E. Bryan had died, testate, before the institution of said prior action, to wit, on February 5, 1953.

Upon the trial of this action, the evidence consisted of (1) documents referred to below, (2) portions of the pleadings herein, (3) portions of the pleadings in said prior action, and (4) the testimony given by Arnold M. Davis upon the trial of said prior action.

Uncontroverted facts include the following:

1. Under date of April 24, 1952, an agreement was made and executed by and between James E. Bryan and Mary Z. Bryan, his wife, as parties of the first part, and Luther B. Hughes, David T. Bailey, June D. Lane, Samuel A. James, Colin MacNair, Arnold M. Davis, and William E. Moore, as parties of the second part, involving the sale and purchase of all issued and outstanding capital stock of Bryan Rock and Sand Company, Inc., a North Carolina corporation, hereafter called Corporation, to wit, a total of 5,000 shares. It recites: (1) that each of the Bryans owned 2,500 shares; and (2) that the purchasers "are officers or key employees" of said Corporation. The parties of the second part agreed to purchase said 5,000 shares in the following proportions: (1) Hughes—1,300 shares; (2) Bailey— 1,300 shares; (3) Lane—800 shares; (4) Moore—400 shares; (5) James—400 shares; (6) MacNair—400 shares; (7) Davis—400 shares. The total purchase price was $3,000,000.00, of which $400,000.00 was to be paid within fifteen days, and the balance in equal payments of $260,000.00 per year for ten years, the deferred payments to be evidenced by notes of the parties of the second part dated May 1,

1952, and bearing interest at the rate of 4½% per annum until paid.

2. The agreement of April 24, 1952, contained, *inter alia,* the following provision:

"The said deferred payments, evidenced by notes, shall be secured by the shares of capital stock hereby sold, provided, however, that the parties of the second part shall be free to liquidate the said Corporation immediately if they so desire in order to conduct the business as a Partnership, in which event the said notes shall be secured by a Deed of Trust on the real property and a Chattel Mortgage on the equipment presently owned by the said Corporation, said Deed of Trust and Chattel Mortgage to be executed and delivered by the second parties to the first parties immediately after the liquidation of said Corporation."

3. Under date of April 25, 1952, the seven purchasers made and executed a partnership agreement. The object of the partners, as stated therein, was to liquidate the Corporation immediately, take over its assets in kind, and carry on under the partnership name of Bryan Rock and Sand Company the business activities theretofore carried on by the Corporation. The capital contributions of the respective partners consisted of the shares of the Corporation's capital stock each had purchased. Their respective interests were defined as follows: Hughes—26%; Bailey—26%; Lane—16%; Moore—8%; James—8%; MacNair—8%; Davis—8%. It was agreed that, prior to the division of partnership profits, each partner should receive as monthly salary the following amounts; Hughes—$1,500.00; Bailey—$1,500.00; Lane—$1,500.00; Davis—$1,000.00; Moore—$700.00; James—$700.00; MacNair—$700.00.

4. Effective as of April 30, 1952, the liquidation of the Corporation was consummated; and from May 1, 1952, until December 10, 1952, the business was carried on by said partnership.

5. Under date of December 10, 1952, the parties thereto executed the following agreement:

### "AGREEMENT AND RELEASE"

"THIS AGREEMENT AND RELEASE, made this 10th day of December, 1952, by and between James E. Bryan and Mary Z. Bryan, his wife, both of Wake County, North Carolina, as parties of the first part, and Luther B. Hughes, David T. Bailey, June D. Lane, Samuel A. James, Colin MacNair, and Arnold M. Davis, all of Wake County, North Carolina, and William E. Moore of Harnett County, North Carolina, parties of the second part, WITNESSETH:

"WHEREAS, under date of April 24, 1952, the parties hereto

executed an Agreement for the purchase by the second parties of all of the issued and outstanding capital stock of Bryan Rock & Sand Company, Inc., a North Carolina corporation, owned in equal shares by the parties of the first part, which Agreement may be deemed to be incorporated herein by reference, and

"WHEREAS, pursuant to said Agreement, the said corporation, Bryan Rock & Sand Company, Inc., was liquidated in kind to the parties of the second part as partners under a Partnership Agreement dated April 25, 1952, which may be deemed to be incorporated herein by reference, and

"WHEREAS, out of the assets so distributed in kind in liquidation of said corporation to the said parties of the second part as partners, there was paid to the parties of the first part the initial payment of Four Hundred Thousand ($400,000.00) Dollars, referred to in said Agreement of April 24, 1952, and

"WHEREAS, the Partnership formed by the parties of the second part, pursuant to said Partnership Agreement of April 25, 1952, commenced business with the assets constituting the liquidating dividend of the said Bryan Rock & Sand Company, Inc., and no other or further capital contributions have been made by said parties of the second part as partners, and

"WHEREAS, the parties of the second part as partners have withdrawn their respective salaries set forth in said Partnership Agreement of April 25, 1952, but have made no other or further drawings and hence the said Partnership has made no distribution of profits apart from said salaries, and

"WHEREAS, due to the difficulties and physical work involved, it has been impossible heretofore to prepare all of the instruments of conveyance between the respective parties in order to effectuate the said Purchase and Sale Agreement of April 24, 1952, and

"WHEREAS, it now appears, due to mutual mistakes of fact, advisable and necessary to rescind and cancel the said Purchase and Sale Agreement of April 24, 1952, and restore the parties hereto to the positions they would have been in had no such Agreement been executed.

"NOW, THEREFORE, in consideration of the premises, the parties hereto agree:

"1. That the said Purchase and Sale Agreement of April 24, 1952, by and between the parties hereto shall be and hereby is cancelled and rendered null and void as of the date of its execution, namely, April 24, 1952.

"2. That the parties of the second part never acquired any right, title or interest to any of the capital stock of Bryan Rock & Sand

Company, Inc., and, accordingly, never acquired any right, title or interest in and to any of the assets of said Corporation which were purportedly distributed to them as partners in complete liquidation in kind of the said Corporation. Conversely, any and all liabilities of said Corporation, which purportedly were assumed by the parties of the second part in the purported complete liquidation of said Corporation, never became and are not now liabilities of said parties of the second part.

"3. That all of the properties of every kind and description, including cash, which have been acquired in the name of the said Partnership pursuant to the Partnership Agreement of April 25, 1952, whether acquired as the result of exchange or conversion from one form of property to another, or as the result of earnings, did not become the property of the parties of the second part either individually, collectively, or as partners but, instead, were and have been held by them as trustees for or nominees of the parties of the first part in equal shares. Conversely, any liabilities which have been incurred in the name of 'Bryan Rock & Sand Company,' the Partnership formed under the said Partnership Agreement of April 25, 1952, shall be, and now are considered to be the actual liabilities of the parties of the first part.

"4. That the Partnership known as 'Bryan Rock & Sand Company,' which was created under said Partnership Agreement of April 25, 1952, shall be and is deemed to have had no validity as such but shall be deemed to have operated exclusively for and in the interests of the parties of the first part, who were and are the actual owners of the properties standing in the name or to the credit of 'Bryan Rock & Sand Company' and who are the parties who are actually liable for all liabilities incurred in the name of 'Bryan Rock & Sand Company.' The parties to said Partnership Agreement of April 25, 1952, will immediately terminate said Agreement effective at once, and will take immediate steps to notify all interested parties, including all banks in which funds standing in the name of 'Bryan Rock & Sand Company' are on deposit; and said parties of the second part further agree not to enter into any further transactions as alleged partners under said Partnership Agreement of April 25, 1952.

"5. That the said initial payment of Four Hundred Thousand ($400,000.00) Dollars referred to in said Purchase and Sale Agreement of April 24, 1952, was not and shall not be deemed to have been a payment by the parties of the second part to the parties of the first part but shall be and is hereby deemed to have been a part of the liquidating dividend in kind of Bryan Rock & Sand Com-

pany, Inc., to its actual and beneficial stockholders, namely: James E. Bryan and Mary Z. Bryan.

"6. That the salaries heretofore drawn by the parties of the second part pursuant to the said Partnership Agreement of April 25, 1952, shall be and hereby are deemed to have been salaries paid to the respective parties of the second part by the parties of the first part for their services as employees.

"7. That each of the parties of the first part does hereby release and absolve each of the parties of the second part from any and all liabilities or obligations incurred under said Purchase and Sale Agreement of April 24, 1952, which is hereby cancelled and annulled ab initio.

"8. That each of the parties of the second part does hereby release and absolve each of the parties of the first part from any and all liabilities or obligations incurred under said Purchase and Sale Agreement of April 24, 1952, which is hereby cancelled and annulled ab initio.

"9. It is the spirit and intent of this Agreement and Release to restore the parties hereto, so far as possible, to the same position in which they would have been had the Purchase and Sale Agreement of April 24, 1952, not been executed and had the said Partnership Agreement of April 25, 1952, not been executed but, instead, the parties of the first part had liquidated the said Corporation in kind and had carried on the business as a Partnership under the name of 'Bryan Rock & Sand Company' from May 1, 1952, to date. Accordingly, each of the parties hereto hereby agrees to execute any additional writing which may appear to be advisable or necessary in order to effectuate that purpose.

"IN WITNESS, WHEREOF, . . ."

6. Under date of December 10, 1952, the parties thereto executed the following agreement:

### "DISSOLUTION OF PARTNERSHIP"

"THIS AGREEMENT, made this 10th day of December, 1952, by and between Luther B. Hughes, David T. Bailey, June D. Lane, Samuel A. James, Colin MacNair, Arnold M. Davis, all of Wake County, and William E. Moore of Harnett County, North Carolina,

### "WITNESSETH"

"THAT WHEREAS, under date of April 25, 1952, the parties hereto executed a Partnership Agreement for the conduct of a business to be known as Bryan Rock & Sand Company, the capital contributions to which were to be made by the parties out of assets to be distributed as a liquidating dividend by Bryan Rock & Sand Company, Inc., a North Carolina corporation, for the purchase of

which the parties hereto had entered into a contract with James E. Bryan and Mary Z. Bryan under date of April 24, 1952, and

"WHEREAS, the said Agreement of Purchase and Sale dated April 24, 1952, has been cancelled and rendered null and void ab initio in consequence of which the Partnership contemplated by the Agreement of April 25, 1952, never became possessed of any assets or properties of its own but, instead, all such assets and properties belonged to and were owned by the said James E. Bryan and Mary Z. Bryan, and

"WHEREAS, the objects and purposes for which said Partnership was created having failed through lack of capital contributions by the partners;

"NOW, THEREFORE, it is hereby agreed that the Partnership contemplated by the said Partnership Agreement of April 25, 1952, be and the same hereby is dissolved."

The evidence relevant to plaintiff's allegations that his execution of said "AGREEMENT AND RELEASE" of December 10, 1952, was obtained by fraud, duress and undue influence, will be considered in the opinion.

Plaintiff excepted to said judgment and appealed, assigning errors.

*Murray Allen, Clem B. Holding and R. P. Upchurch for plaintiff, appellant.*

*Arendell & Green and Alton T. Cummings for defendant, First-Citizens Bank and Trust Company of Smithfield, North Carolina, appellee.*

*Armistead Maupin for defendant Byron E. Bryan, appellee.*

BOBBITT, J. The only question presented is whether the evidence, considered in the light most favorable to plaintiff, was sufficient to make out a case for jury determination.

It was stipulated that Davis executed each and all of the documents referred to in the statement of facts. Obviously, plaintiff is barred by said "AGREEMENT AND RELEASE" of December 10, 1952, unless it is void as to Davis on the ground that his execution thereof was obtained by fraud, duress and undue influence, as alleged.

Plaintiff's first contention is that, when Davis executed said "AGREEMENT AND RELEASE," the Bryans' relationship to Davis was that of a fiduciary; and that the presumption of fraud arising from their fiduciary relationship cast upon defendants the burden of establishing by the greater weight of the evidence that the transaction was fair to Davis. Hence, plaintiff contends, independent of evidence of actual fraud, duress or undue influence, the issue was for

determination by the jury.

If such fiduciary relationship existed, decisions such as *McNeill v. McNeill,* 223 N.C. 178, 25 S.E. 2d 615; *Abbitt v. Gregory,* 201 N.C. 577, 160 S.E. 896, and others cited by plaintiff, would support plaintiff's contention as to the legal significance thereof; but none of the cited cases supports his antecedent and basic contention that the evidence herein was sufficient to support a finding that such fiduciary relationship existed.

In his brief, plaintiff asserts: "The fiduciary or confidential relationship was created when the parties executed the agreement of purchase and sale." But the agreement of April 24, 1952, to which plaintiff refers, simply defined the contractual rights and obligations of the respective parties. Nothing therein may be construed as establishing a fiduciary or confidential relationship between the contracting parties.

Plaintiff's second contention is that evidence tending to show "the absence of or the gross inadequacy of consideration alone was sufficient to take the case to the jury upon the issues of fraud, undue influence and duress," citing *Knight v. Bridge Co.,* 172 N.C. 393, 90 S.E. 412; *Butler v. Fertilizer Works,* 195 N.C. 409, 142 S.E. 483; and *Hill v. Insurance Co.,* 200 N.C. 502, 157 S.E. 599. Conceding the soundness of the rule declared in the cited cases as applied to the factual situations therein, the evidence here does not show either absence or gross inadequacy of consideration for said "AGREEMENT AND RELEASE."

Neither Davis nor any other partner had made any capital contribution to the partnership. The only capital assets of the partnership were those acquired from the Corporation. The initial payment of $400,000.00 to the Bryans was made therefrom. While the partnership subsisted Davis received a larger salary than he had theretofore received as an employee of the Corporation.

Plaintiff relies largely on testimony of Davis tending to show that from May 1, 1952, to December 10, 1952, the period the business was operated by the partnership, the profits, exclusive of the amount set aside for depreciation of equipment, were $472,330.24, and that the properties and business were of much greater value on December 10, 1952, than on April 24, 1952, or May 1, 1952.

By said "AGREEMENT AND RELEASE," Davis and his partners were released from their obligations under the contract of April 24, 1952, to pay $2,600,000.00, the deferred portion of the purchase price; and, whether said "AGREEMENT AND RELEASE" was to their advantage or otherwise, it cannot be said that there was an absence or gross inadequacy of consideration therefor. In this con-

nection, it is noted that the agreement of April 24, 1952, and said "AGREEMENT AND RELEASE," were between the Bryans, on the one hand, and all seven purchasers or partners, on the other hand.

The circumstances preceding and at the time of the execution of said "AGREEMENT AND RELEASE" are narrated below.

The partners elected these officials, who served during the period of partnership operation, viz.: Bailey, General Manager; Hughes, Office Manager and Purchasing Agent; Davis, Sales Manager; Mac-Nair, Traffic Manager; Lane, General Superintendent. It appears that, pending performance by the seven purchasers of their obligations under the contract of April 24, 1952, the business was carried on substantially as theretofore. Davis testified that Bryan continued to occupy the same office in the suite of six offices in the Raleigh Building; that Bailey made reports to Bryan; and that Bryan "took charge of the business." He did say that the name on the door to Mr. Bryan's office was changed to "James E. Bryan."

"Several days" prior to December 10, 1952, the late Mr. Sam Ruark, a Raleigh attorney, drafted certain notes and deeds of trust bearing date of May 1, 1952, which, if executed by the purchasers and their wives, as provided therein, would have obligated them to pay the deferred portion of the purchase price, to wit, $2,600.000,00, in accordance with the schedule of maturities specified in the contract of April 24, 1952. Until then, so far as the evidence discloses, the purchasers had done nothing to comply with their obligations in respect of said deferred portion of the purchase price. Whether Mr. Ruark represented the Bryans or the partnership or both is not clear. As to this, Davis' testimony was indefinite and contradictory.

Prior to December 10, 1952, the partners, at several meetings, discussed whether they would sign the notes and deeds of trust as drafted by Mr. Ruark. On December 7, 1952, at such a meeting, Lane was noncommittal as to whether he would sign. During this period, Davis conferred with an attorney with reference to these documents.

At the conference or meeting on December 10, 1952, the persons present were (1) each of the seven partners, (2) James E. Bryan, (3) Mr. Ruark, and (4) Mr. Stanley Worth, an attorney of Washington, D. C., who represented the Bryan interests. Davis testified: "The papers were brought in and we were asked whether or not we would sign them by Mr. Ruark." All partners were willing to sign except Lane. Lane "said he wasn't going to sign them." Davis testified that, while he didn't like certain provisions, he agreed to sign the notes and deeds of trust.

When Lane said he would not sign the notes and deeds of trust, Mr. Worth "said it would have to be taken back as of May 1st to

a partnership of Mary Z. Bryan and James E. Bryan." Mr. Worth
then drafted said "AGREEMENT AND RELEASE." Since Mr.
Worth had to go back to Washington, the partners were told to wait;
and, after said "AGREEMENT AND RELEASE" had been drafted,
were invited "into the back room where Mr. Worth was, and it was
presented for signatures and was given to us for signing so Mr. Worth
could go back to Washington." At the time of the actual signing of
said "AGREEMENT AND RELEASE," the only persons present
were the seven partners, Mr. Bryan, and Mr. Worth.

When he executed said "AGREEMENT AND RELEASE," Davis,
then 50 years of age, was a college trained man of wide experience in
road construction and engineering. There was no suggestion that he
could not or did not read and fully understand the provisions of said
"AGREEMENT AND RELEASE" or that anybody misrepresented
in any way the contents thereof. True, Davis testified that it "was
given to us for signing without change," and that he didn't sign it
"freely and voluntarily," but there was no testimony that he raised
any question or made any protest as to said "AGREEMENT AND
RELEASE" as drafted by Mr. Worth or any provision thereof or
that he requested or even suggested a delay for the purpose of fur-
ther study and consideration.

There is merit in plaintiff's contention that the notes and deeds
of trust as drafted by Mr. Ruark contained provisions beyond those
required by the contract of April 24, 1952. However, these facts
should be noted: (1) So far as the evidence discloses, the only dis-
cussion as to specific provisions was by the partners *inter se;* (2)
Davis agreed to sign the notes and deeds of trust as drafted; (3) Lane,
whose refusal to sign resulted in the rescission *ab initio* of the con-
tract of April 24, 1952, did not indicate that his refusal was based
on any particular provisions of the notes and deeds of trust. In any
event, irrespective of the actions of his co-purchasers and partners,
Davis was at liberty to refuse to sign said "AGREEMENT AND
RELEASE" and stand on his rights under the contract of April 24,
1952, if he wanted to do so. It is noted that plaintiff did not call Lane,
or any of Davis' former partners, to testify as witnesses herein.

Under date of December 10, 1952, the seven partners, including
Davis, executed the "DISSOLUTION OF PARTNERSHIP" agree-
ment. There was no evidence as to the circumstances under which
this document was drafted and executed.

Beginning December 10, 1952, and thereafter, the business was
operated by a partnership composed of James E. Bryan and Mary Z.
Bryan. It appears that, while Davis did some work for the new part-
nership after December 10, 1952, he was out sick for three or four

days. When he came back to the office on or about December 16, 1952, he was discharged by D. T. Bailey, then acting for the Bryan partnership. (Note: Mr. Bailey had 'been General Manager of the seven-member partnership and prior thereto Vice President and Auditor of the Corporation. Davis was an employee of the Corporation from February 15, 1946, to April 24, 1952. He had no written contract of employment and "no term of employment was specified.")

Davis testified that he "got a check for $2,000 along about the 13th of December" but did not know whether this was for his salary through the month of December. He testified that he received another check dated December 16, 1952, for $1,600.00, drawn on Bryan Rock & Sand Company, not incorporated, which he endorsed and cashed, but did not know whether this was a bonus payment.

We have considered both the admitted and the excluded evidence. Hence, there is no need to discuss plaintiff's assignments of error based on his exceptions to the court's exclusion of portions of Davis' testimony. However, it seems appropriate to say that Davis' testimony (1) as to property valuations made by a Mr. Wright, who was not a witness, and (2) as to what Mr. Bailey, who was not a witness, *told* Davis Mr. Bryan had said and done, was clearly incompetent and properly excluded.

Whether Davis by (1) his execution of said "DISSOLUTION OF PARTNERSHIP," and (2) his acceptance of said checks, affirmed and ratified said "AGREEMENT AND RELEASE," is a question we do not reach. See *Presnell v. Liner*, 218 N.C. 152, 10 S.E. 2d 639; *Sherrill v. Little*, 193 N.C. 736, 138 S.E. 14, and cases cited therein.

The judgment of involuntary nonsuit is affirmed on the ground that there was no evidence that Davis' execution of said "AGREEMENT AND RELEASE" was obtained by fraud, duress and undue influence as alleged, and therefore plaintiff's right to recover is barred by said "AGREEMENT AND RELEASE."

Affirmed.