**Adrien ALPHONSE; and Alfonzo Palmer, Plaintiffs,**

v.

**NORTHERN TELECOM, INC., Defendant.**

**No. 90–239–CIV–5–H.**

United States District Court, E.D. North Carolina, Raleigh Division.

Sept. 11, 1991.

Donnell Van Noppen, III, Smith, Patterson, Follin, Curtis, James, Harkavy & Lawrence, Raleigh, N.C., for plaintiffs.

Frank P. Ward, Jr., Maupin, Taylor, Ellis & Adams, Raleigh, N.C., for defendant.

## ORDER

MALCOLM J. HOWARD, District Judge.

This matter is before the court on the parties' objections to the Memorandum and Recommendation of the Honorable Charles K. McCotter, United States Magistrate Judge, filed on August 5, 1991, pursuant to Federal Rule of Civil Procedure 72(b). The parties have filed timely objections to the Magistrate Judge's findings and recommendations.

This action involves allegations of age and race discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–629, and 42 U.S.C. § 1981, arising from the termination of plaintiffs' employment with the defendant. The defendant filed a motion for partial summary judgment on February 27, 1991, asserting two grounds: 1) that the plaintiffs voluntarily released the defendant from liability under the ADEA, and 2) that the failure to rehire claims were beyond the scope of the charge with the Equal Employment Opportunity Commission ("EEOC"). After conducting a hearing, the Magistrate Judge concluded that the releases were void and that the plaintiffs' failure to rehire claims were not included in the scope of the EEOC charge. He then recommended that summary judgment be denied as to defendant's contention that they were released from liability, and granted as to the failure to rehire claims.

This court has carefully reviewed the Memorandum and Recommendation of the Magistrate Judge and the objections filed by both parties. Accordingly, the matter is ripe for adjudication.

### STATEMENT OF THE CASE

Although this action was originally brought by five plaintiffs, three plaintiffs voluntarily dismissed their claims. Therefore, only those facts relating to the remaining two plaintiffs will be discussed.

Plaintiff Adrien Alphonse was hired by Northern Telecom, Inc. ("NTI") on February 20, 1979. At the time of his termination, he had obtained the position of Change Application Engineer II. Plaintiff Alfonzo Palmer was hired by NTI on December 10, 1984, and was employed as a Project Construction Engineer at the time of his termination.

In late 1988, NTI underwent a reduction in its work force as part of an effort to reduce costs. Consequently, Mr. Alphonse and Mr. Palmer, then 54 and 47 years old, respectively, were laid off in November, 1988, purportedly because their positions were being eliminated.

Plaintiff Alphonse alleges that, after his termination, his duties were given to two younger, white employees, and that his position was posted in January, 1989. He further contends that he had discussed the position with the human resources manager, but was not interviewed or considered for the position, which was subsequently awarded to a younger, white male.

Plaintiff Palmer alleges that his duties were assumed by a younger, white employee. He also asserts that he unsuccessfully applied for more than twenty positions following his termination through NTI's Transfer and Advance Program (TAP).

Shortly after their terminations, Plaintiffs Alphonse and Palmer signed comprehensive releases which

> fully and completely release[d] and discharge[d] Northern Telecom Inc.... from any and all real or pretended claims, demands, rights, liabilities, damages, injuries, or causes of action whatsoever, including, but not limited to ... *any claims under the Age Discrimination in Employment Act of 1967* ... arising out of any employment relationship with Northern Telecom Inc. and/or the termination of such employment relationship. (emphasis added).

Defendant's Exhibit 1.

The releases acknowledge that the plaintiffs read and understood all of the terms therein. The releases recite that each plaintiff was given the opportunity to consult the attorney of his choice before signing the release, and that each plaintiff was executing the release voluntarily and of his own free will. In consideration for signing the release, the plaintiffs received a severance allowance and the extension of other pecuniary benefits that they would not have otherwise received. The plaintiffs have received and retained these benefits.

The plaintiffs admit that they read the releases before signing, and that they understood that they were giving up their right to sue NTI for age discrimination. Deposition of Alphonse at 379–80; Deposition of Palmer at 312–13. However, the plaintiffs allege that NTI fraudulently in-

duced their agreement to the release by asserting that their jobs were being eliminated, which the plaintiffs claim is erroneous.

In March 1989, Mr. Alphonse and Mr. Palmer filed administrative charges of age and race discrimination with the EEOC. The plaintiffs stated in their charges that they were dismissed by NTI because of their age and race. In addition to these formal charges, Mr. Alphonse and Mr. Palmer provided the EEOC investigators with oral and written testimony, which they allege contained allegations of discrimination by NTI in failing to rehire the plaintiffs.[1]

## DISCUSSION

### I. STANDARD OF REVIEW

[1] Summary judgment is proper when no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). All facts and inferences from the facts must be viewed in the light most favorable to the nonmoving party. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985). Special caution in granting summary judgment in employment discrimination cases is necessary because the critical issue often involves motive or state of mind. *Ballinger v. North Carolina Agric. Extension Service*, 815 F.2d 1001, 1005 (4th Cir.), *cert. denied*, 484 U.S. 897, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987). However, the court in *Ballinger* did not intend "that summary judgment is *never* an appropriate vehicle for resolution" in an ADEA action. *Id.*

### II. RELEASE AND RATIFICATION

▪ Employees may validly waive their federal ADEA rights in private settlements with their employers provided that their consent to a release is both knowing and voluntary. *O'Shea v. Commercial Credit Corp.*, 930 F.2d 358, 361 (4th Cir. 1991). Waivers of ADEA claims must be analyzed in accordance with ordinary contract principles applicable under state law. *Id.* at 362. Accordingly, this court must determine under North Carolina contract law whether the plaintiffs' waiver of their right to sue under the ADEA, if knowing and voluntary, is valid and enforceable.

▪ The plaintiffs admit that they voluntarily signed the releases and that they understood that they were giving up the right to sue NTI for age discrimination. Deposition of Alphonse at 379–80; Deposition of Palmer at 312–13. The terms of the release are clear and unambiguous. Thus, this court finds that the plaintiffs Alphonse and Palmer knowingly and voluntarily waived their right to sue NTI under the ADEA.

▪ The plaintiffs allege in their complaint that NTI misrepresented the fact that their positions were being eliminated to fraudulently induce them to sign the releases. The plaintiffs contend that their positions were not eliminated, testifying before the Magistrate Judge that they would not have signed the releases in the absence of this misrepresentation. Whether these allegations of fraud are sufficient to invalidate the releases must be answered by applying North Carolina law.

North Carolina principles of contract law provide that every portion of a release obtained by fraud or misrepresentation is voidable. *Cowart v. Honeycutt*, 257 N.C. 136, 142, 125 S.E.2d 382, 386 (1962) ("a release voidable for fraud ... is unenforceable"); *Biggs v. First–Citizens Bank & Trust Co. of Smithfield*, 249 N.C. 435, 106 S.E.2d 709 (1959) ("plaintiff is barred by [release] ... unless it ... was obtained by fraud"); *Cunningham v. Brown*, 51 N.C.App. 264, 276 S.E.2d 718 (1981) ("a release, like any other contract, is subject to avoidance"); *Beeson v. Moore*, 31 N.C.App. 507, 229 S.E.2d 703 (1976) (plaintiff must prove the facts sufficient to render a release voidable), *cert. denied*, 291 N.C. 710, 232 S.E.2d 203 (1977). The distinction between "void" and "voidable" is

---

**1.** After conducting an investigation, the EEOC investigators handling Mr. Alphonse's and Mr. Palmer's claims determined that the evidence obtained was insufficient to establish a statutory violation.

crucial: a void contract is invalid from its inception and cannot be ratified; a voidable contract can be avoided or ratified at the option of the defrauded party.[2]

The Magistrate Judge concluded that under North Carolina law a release obtained by fraud was void. Because the plaintiffs' allegations were sufficient to raise an issue of fraud, summary judgment was denied. However, the substantive distinction between "void" and "voidable" has often been abandoned in favor of semantic preference. For example, in *Biggs v. First–Citizens Bank & Trust Company of Smithfield,* 249 N.C. 435, 106 S.E.2d 709 (1959), the North Carolina Supreme Court stated that "plaintiff is barred by said 'Agreement and Release' ... unless it is void ... on the ground that his execution thereof was obtained by fraud." Yet, in the concluding paragraphs of that decision, the court expressly stated that it need not reach the question whether the release was affirmed and ratified. By definition, only a "voidable" release can be ratified.

This court also relies on the North Carolina Supreme Court's decision in *Cowart v. Honeycutt,* 257 N.C. 136, 125 S.E.2d 382 (1962). In *Cowart,* the court applied the general rule that " '[i]f a misrepresentation amounting to fraud is made as to any matter embraced in the release the instrument is vitiated as a whole, and not merely as to the matter to which the misrepresentation relates; every portion and clause of a release voidable for fraud in its inception is unenforceable and not binding.' " *Id.* at 142, 125 S.E.2d at 386 (quoting 76 C.J.S. Release § 27, at 651.) Again, in the concluding remarks, the court expressly stated that it need not address the question of ratification because the defendant had not raised it.

■ By accepting and retaining the benefits of a release, a party to a voidable release ratifies the release and cannot avoid its obligations. *Grillet v. Sears, Roebuck & Co.,* 927 F.2d 217, 220 (5th Cir.1991). "If a releasor, therefore, retains

the consideration after learning that the release is voidable, her continued retention of the benefits constitutes a ratification of the release." *Id.* The Fourth Circuit adopted this same approach to ratification in *O'Shea.* In *O'Shea,* the Fourth Circuit upheld a summary judgment in an ADEA action because the plaintiff voluntarily signed a waiver *and* subsequently ratified the agreement by accepting severance pay and other benefits. *O'Shea v. Commercial Credit Corp.,* 930 F.2d 358 (4th Cir. 1991).

The law of North Carolina applicable to the ratification of releases is set forth in *Presnell v. Liner,* 218 N.C. 152, 10 S.E.2d 639 (1940). In *Presnell,* the North Carolina Supreme Court held that the retention and use of consideration "constitute a ratification of the release, even if it be conceded that its original execution was obtained by fraud and misrepresentation." *Id.* at 154, 10 S.E.2d at 640. The court went on to state that "if one, who has been induced by fraud and misrepresentation to execute a release and subsequently learns the true import thereof, knowingly takes the benefits of it he thereby ratifies and gives it force and effect." *Id.*

In exchange for signing the releases, plaintiffs Alphonse and Palmer received substantial severance pay. To this date, plaintiffs have made no effort to return any portion of the consideration paid to them. Even if the plaintiffs were now to attempt to return the consideration received, their offer would be too late, for more than two years have passed since they learned of the alleged fraud. *See id.*

Accordingly, the court finds that the plaintiffs voluntarily signed releases of their ADEA claims in exchange for severance pay and other benefits. The plaintiffs have ratified these releases by retaining the severance pay and other benefits for more than two years. Therefore, the defendant is entitled to judgment as a matter of law and summary judgment is appropriate.

---

**2.** The words "void" and "voidable" have been used interchangeably and inappropriately by courts. At times, the word "avoid" has been

used as well. It is unclear what courts have meant when only the word "avoid" is used.

## III. FAILURE TO REHIRE CLAIMS

██ In the complaint filed with this court, the plaintiffs alleged claims based on the defendant's failure to rehire them. This allegation was not raised in their EEOC complaints. The defendant moved for summary judgment. Because these allegations were neither contained in the plaintiffs' filing with the EEOC nor investigated by the EEOC, the Magistrate Judge recommended granting summary judgment.

The Magistrate Judge properly identified the standard set forth by the Fourth Circuit in *Chisholm v. United States Postal Service*, 665 F.2d 482 (4th Cir.1981): the scope of an action is confined by the scope of the administrative investigation that can be reasonably expected to follow the charge of discrimination. *Id.* at 491. The First Circuit recently explained the "scope of the charge" rule: "An administrative charge is not a blueprint for the litigation to follow.... Rather, the critical question is whether the claims set forth in the civil complaint come within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.' " *Powers v. Grinnell Corp.*, 915 F.2d 34, 38–39 (1st Cir.1990) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir.1970)). The controlling factor is not what the EEOC actually did in its investigation, but what could reasonably be expected to grow from the original complaint. *Powers*, 915 F.2d at 39 n. 4.

The plaintiffs object to the Magistrate Judge's recommendation because they assert that their EEOC complaint could have reasonably led to an investigation of a failure to rehire claim. However, the scope of the charge rule requires that any claim alleged in the civil complaint be reasonably expected to follow from the EEOC charges. The complaints filed with the EEOC by the plaintiffs here, along with Mr. Alphonse's "list of gripes," do not contain any indication that they asserted claims of failure to rehire. The EEOC apparently was never informed of such action and could not reasonably be expected to investigate what it did not know.

Based on the above facts, this court finds that the failure to rehire claims were not included in the scope of the EEOC charge, and that the Magistrate Judge was correct in granting summary judgment on the failure to rehire claims.

## CONCLUSION

For the foregoing reasons, this court finds that the releases signed by the plaintiffs were voidable, and that the plaintiffs subsequently ratified the releases by retaining the consideration given to them by NTI. This court also finds that the plaintiffs failed to include the failure to rehire claim in the EEOC charge, and the EEOC's investigation did not include this claim.

Accordingly, the defendant's motion for partial summary judgment on plaintiffs' discharge and failure to rehire claims arising under the ADEA is GRANTED and these claims are hereby DISMISSED. There remains in this case the issue of NTI's failure to rehire the plaintiffs in violation of 42 U.S.C. § 1981.

So ordered.